IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Sarina Ervin, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:21-cv-06064 |
| Raymond Ervin, ) | Judge Gary Feinerman, Presiding |
| Respondent, ) | |
| ) | |
| and ) | |
| ) | |
| Gwendolyn Barlow, ) | |
| Third Party Respondent. ) | |

**RESPONDENTS' RESPONSE AND BRIEF IN OPPOSITION TO
PETITIONER'S MOTION TO REMAND**

Respondents, Raymond Ervin ("Raymond") and Gwendolyn Barlow ("Gwendolyn") hereby respond to Petitioner's Memorandum in Support of Her Motion to Remand [Dkt. 6,7]. Raymond and Gwendolyn also incorporate by reference in their response, the arguments, evidence, and authorities set forth in the Notice of Removal [Dkt. 1].

**I.    The Notice of Removal is Proper Pursuant to Federal Jurisdiction**

The Petitioner mischaracterizes the nature and tenor of the Respondents' Notice of Removal, encouraging the Court to disregard 28 USC § 1441 and ignore the evidence in support of removal, based solely upon Petitioner's unsupported claims that this action is similar to the previous removal. This is not the case. This removal presents a clear distinction, raising Federal question jurisdiction, wherein the State Court, under color of law and having no jurisdiction in

1

Social Security matters[1], has chosen to ignore the provisions of the Social Security Act, Federal Law, Constitutional, Due Process and Equal Protection safeguards accorded the Respondents, and deprived them of their rights to property, privacy and personal liberty without access to Constitutional, Due Process and Equal Protections. The Respondents in the instant case are faced with a conundrum of being placed in legal jeopardy, fined, and incarcerated without the right to counsel for criminal civil contempt adjudged by a State Court beyond the tenets of its authority[2]. The State Court further refuses to yield to Federal authority as directed by the *Supremacy Clause*[3] and vacate its judgments as nullities and the Petitioner's claims as moot[4].

> "Where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal, in opposition to them. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." "*Elliott v. Peirsol*, 26 U.S. (1 Pet.) 328, 340 (1828), cited with approval, *Kalb v. Feuerstein*, 308 U.S. 433, 438-39 n. 8 (1940); cf. *The Betsey*, 3 U.S. (3 Dall.) 6, 15-16 (1794)." In re *Gurrola*, 328 B.R. 158, 164 (B.A.P. 9th Cir. 2005). Further see *Brown v. Board of Education*, 349 U. S. at 300, "Courts of equity may properly take into account the public interest in the elimination of such obstacles in a systematic and effective manner. But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them." *Id.*

The Respondents further raise *Brady*[5] claims, that the State has not timely provided upon Raymond's repeated request, the requested exculpatory evidence in its possession that no child support or arrearage existed, and that the Canadian Order of July 5, 2000 was determined to be

---

[1] [Dkt. 1] – "Rights to social security benefits are within the exclusive federal question jurisdiction of the United States courts …", *Raskin v. Moran*, 684 F.2d 472, 475 (7th Cir. 1982).
[2] See *Raskin v. Moran*, 684 F.2d 472, 475 (7th Cir. 1982).
[3] *DIRECTV, Inc. v. Imburgia*, 577 U.S. \_\_\_, No. 14–462, slip op. at 5 (2015) (holding that the Supreme Court's interpretation of a federal law is an "authoritative interpretation of that Act," requiring the "judges of every State" to "follow it.").
[4] [Dkt. 1, Ex. 52]
[5] *Brady v. Maryland*, 373 U.S. 87 (1963)

unenforceable. Such evidence would have permitted the Courts to promptly extinguish the Petitioner's intentional misrepresentations[6] and avoided befouling the machinery of justice in the State and Federal Courts thus rendering their rulings nullities. As the Petitioner relies upon the rulings of those Courts, whose determinations were made in the absence of this exculpatory evidence[7], this issue must first be dispatched so as to provide the Respondents access to their rights to a fair hearing under the Fifth and Fourteenth Amendments' Due Process Clause. Mootness is defined herein by Justice Roberts in *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 184 L. Ed. 2d 553, 133 S. Ct. 721 (2013),

> "A case becomes moot—and therefore no longer a "Case" or "Controversy" for purposes of Article III—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U. S. 478, 481 (1982) (*per curiam*) (some internal quotation marks omitted). No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez*, supra, at 93."

In the instant case the crux of the Petitioner's argument for remand rests upon the rulings in previous State and Federal Courts, wherein evidence[8] by the Illinois Department of Healthcare and Family Services (IHFS) that mooted the Petitioner's claims of child support were suppressed. Further, as there existed a duty of candor[9] and the demand that Petitioner's counsel exhibit a reasonable exertion of diligence[10], the duty to bring such matter of material fact to the

---

[6] "Petitioner's papers are inexpertly drawn, but they do set forth allegations that his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him. These allegations sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody." *Pyle v. Kansas*, 317 U. S. 213, 215-216

[7] "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U. S. 264, 269

[8] [Dkt. 1, Ex. 41, 42, 63] and [Dkt. 11, Ex. 17]

[9] Illinois Rules of Professional Conduct of 2010, Rule 3.3

[10] Illinois Rules of Professional Conduct of 2010, Preamble [4]

courts' attention[11] would have likewise been incumbent upon them. Here in the Petitioner's Memorandum in Support of Her Motion for Remand, these nullities upon which the Petitioner has created this travesty are merely restated. Given the Court's holding in *Already, LLC. V. Nike, Inc.* and the determination by IHFS of the unenforceability of the Canadian Order of July 5, 2000 there is nothing to support Petitioner's motion for remand.

There exist no state claims wherein the instant case may garner legitimacy as a state action. Petitioner who is a Canadian resident has no nexus[12] to Illinois wherein, Illinois has no jurisdiction over the marriage, divorce, custody or child support matters, and Petitioner maintains no real or personal property in the State. The State here is silent as to the basis for its justification in attempting to retain jurisdiction on a Federal matter.

II. **Petitioner fails to Rebut Respondents Claims in Their Motion to Remand**

    A. **The Notice of Removal is Not Untimely**

The Seventh Circuit Court of Appeals, in *Walker v. Trailer Transit, Inc.*, 727 F.3d 819 (7th Cir. 2013), clearly elucidates the nature of the statute, its time provisions and when and how the 30-day time provisions are prompted.

> "… However, if the case stated by the initial pleading is not removable, **a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.**" *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 823 (7th Cir. 2013) [Emphasis added].

The Respondents here timely filed the Notice of Removal within the thirty (30) day window afforded by § 1446(b)(3) as the State Court's order of October 15, 2021, which was received by

---

[11] Illinois Rules of Professional Conduct of 2010, Rule 4.1
[12] "…"there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U. S., at ___–___, ___ (slip op., at 5–6, 7) (quoting *Goodyear*, 564 U. S., at 919)."

Respondents' attorney via email October 19, 2021. Respondents filed their Notice of Removal November 15, 2021. Respondents' Notice of Removal noted the operative language, "may be filed within 30 days after receipt by the defendant," and the fact that pursuant to FRCP Rule 6 the removal was timely filed.

Contrary to Petitioner's claim that the October 15, 2021 order does not satisfy the grounds for removal, this grossly discounts the criminal sanctions imposed by the State Court as acts that foreclose Respondent's personal liberty and vitiate their Constitutional and Due Process Rights and are subject to federal removal. Further, the holding by Judge Alonso relies upon the sequestration of evidence within the Petitioner's possession, at that time, that their case was moot because of the IHFS determination of unenforceability due to lack of due process. As this matter was not timely appealed or judicial review requested, its finality is a bar to all actions by the Petitioner[13].

### B. The Notice of Removal is Not Impermissible

"The Eighth Amendment's Excessive Fines Clause is an incorporated protection applicable to the States under the Fourteenth Amendment's Due Process Clause. Pp. 2–9. (a) The Fourteenth Amendment's Due Process Clause incorporates and renders applicable to the States Bill of Rights protections "fundamental to our scheme of ordered liberty," or "deeply rooted in this Nation's history and tradition." *McDonald v. Chicago*, 561 U. S. 742, 767 (alterations omitted). If a Bill of Rights protection is incorporated, there is no daylight between the federal and state conduct it prohibits or requires." *Timbs v. Indiana*, 586 U. S. \_\_\_\_ (2019). The instant case

---

[13] *Califano v. Sanders*, 97 S.Ct. 980 (1977) *Further held*, absent a constitutional challenge, section 205(g) of the Social Security Act, which provides that an individual may seek judicial review of any final decision made after a hearing, does not authorize judicial review of a decision denying a petition to reopen a prior final decision of the agency, as the petition may be denied without providing a section 205(b) hearing.

mirrors *Timbs* here that the access to the court for redress afforded by the Constitution, Due Process and Equal Protection safeguards in a criminal matter, wherein the sentence is imposed by a State Court exceeding the metes and bounds of its jurisdiction are improperly foreclosed to the Respondents; when reviewed in the light of the actions of the Petitioner and her counsel to unreasonably and vexatiously multiply the proceedings in State and Federal courts by failing to dismiss them when it was apparent that their claims were moot, this serves to defeat the administration of justice[14]. Given the graveness imposed by the loss of one's personal liberty[15], the expanse of the Petitioner's and her counsel's actions must be checked. Secondly, for Petitioner and counsel to proceed further the reach of this transgression in the instant case, while simultaneously harkening to the State Court while the matter is under the District Court's jurisdiction presents an issue for consideration of the inherent exercise of authority for sanction.

    C.    **The Notice of Removal is Not Improper**

The Petitioner has not refuted that she was granted a Canadian dissolution and that this order was assigned to the CSEA member state Ontario, Canada, in compliance with 42 USC 602(a)(26), Title IV-D, which in turn assigned this order to Illinois Department of Healthcare and Family Services (IHFS). Upon investigation and review IHFS determined the order was unenforceable for lack of due process to Raymond, and notified Sarina, who never filed a timely appeal or sought judicial review. Despite her impediments to bring private lawsuit as per *Blessing v. Freestone*[16] she nonetheless brought a collection proceeding against Raymond using

---

[14] "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 84

[15] "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry*, 392 U.S. at 9, quoting *Union Pac.R.Co. v. Botsford*, 141 U.S. 250, 251 (1891)

[16] See *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)

orders that had been previously vacated and the <u>unenforceable Canadian order</u>. Sarina concealed the IHFS determination from the court and claimed justification in the Illinois Marriage and Dissolution Act (IMDA), though Illinois has repeatedly acknowledged that Canada maintained exclusive jurisdiction. Sarina's claim that Illinois jurisdiction lie serves to provide a false narrative to the Court to merely don the apparel of a state action to shield it from scrutiny through removal. No state issues rest with this matter; it is not a matrimonial or post-decree matter as Petitioner contends because the divorce was granted in Canada over twenty (20) years ago where the Canadian Court maintained continuing and exclusive jurisdiction. Petitioner even refers to the action as a collection matter throughout the Motion to Remand [Dkt. 7]. " The law of specific jurisdiction thus seeks to ensure that States with "little legitimate interest" in a suit do not encroach on States more affected by the controversy. *Bristol-Myers*, 582 U. S., at ___ (slip op., at 6)." Sarina is not a resident of Illinois; the children are also not residents of Illinois. The marriage or the divorce did not occur in Illinois. There is a no connection between Illinois and the specific claim that Sarina brings. Illinois has "little legitimate interest" in Sarina's claims and as such should not "encroach" on Canada, which is "more affected by the controversy." Subsequently, as the US Supreme Court found in *Bristol-Myers*, jurisdiction is improper. The Court held "…"there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U. S., at ___−___, ___ (slip op., at 5−6, 7) (quoting Goodyear, 564 U. S., at 919)." In this case, there is nothing that has taken place in Illinois that is affiliated with Sarina's claim and thus is not subject to Illinois' regulation.

> "… the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." World-Wide Volkswagen, 444 U. S., at 293, 294.

It is the Due Process Clause of the 14th Amendment that is upended in this case. The 14th Amendment limits the extent to which State courts can exercise personal jurisdiction over a defendant. In this case pursuant to established precedent of the US Supreme Court regarding personal jurisdiction and the 14th Amendment, the State court lacks personal jurisdiction over Raymond to enter a valid judgment in the matter.

> "…It follows that the interpretation of the Fourteenth Amendment enunciated by this Court in the *Brown* case is the supreme law of the land, and Art. VI of the Constitution makes it of binding effect on the States "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Every state legislator and executive and judicial officer is solemnly committed by oath taken pursuant to Art. VI, cl. 3, "to support this Constitution." Chief Justice Taney, speaking for a unanimous Court in 1859, said that this requirement reflected the framers' "anxiety to preserve it [the Constitution] in full force, in all its powers, and to guard against resistance to or evasion of its authority, on the part of a State…" *Ableman v. Booth*, 21 How. 506, 524. *Id* at 18.

It is chilling that a State court can usurp one's rights and freedom based on abuse of authority. Notwithstanding that is precisely what is at stake in this case.

"State Judges, as well as federal, have the responsibility to respect and protect persons from violations of federal constitutional rights." *Gross v. State of Illinois*, 312 F 2d 257; (1963). Raymond has consistently raised the issue of violation of Due Process throughout all of the proceedings in Illinois; however the matter was never heard. "Where a federal right is implicated, the State must provide the accused a process that is constitutionally compliant with the U.S. Constitution and mandatory under federal law." *Goldberg v. Kelly*, 397 U.S. 254 (1970).

"The Supreme Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). The *Mitchum* Court reasoned:

> "Section 1983 was thus a product of a vast transformation from the concepts of federalism that had prevailed in the late 18th century when the anti-injunction statute was enacted. The very purpose of s 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights — to protect the people from unconstitutional action under color of state law, `whether that action be executive, legislative, or judicial.' Ex parte Virginia, 100 U.S. 339, at 346, 25 L.Ed. 676 (1879) In carrying out that purpose, Congress plainly authorized the federal courts to issue injunctions in s 1983 actions, by expressly authorizing a `suit in equity' as one of the means of redress."

What is essential here is that the Court be in possession of the entire truth of the matter at hand and in possession of evidence that is capable of directly verifying the statements of the parties. The abbreviated summary afforded the Court by Sarina and her counsel omits many consequential elements that the Court has never been afforded due to the purposeful omission to place Petitioner in advantageous position, wherein the rulings predicated upon these actions served as the basis to support future rulings. In accordance with FRCP 26 an accurate summation of the proceedings related to this matter is herein provided [Dkt. 11, Ex. 21].

**II.   The Social Security Act and its Provisions Govern in This Matter**

Petitioner has not presented any evidence in her Motion to Remand [Dkt. 6,7] that refutes the allegation that Sarina is able to overcome the constitutional challenge required by *Blessing* to afford her a rebuttable presumption of §1983 right to private lawsuit. Assuming *arguendo* that challenge is granted Sarina must then overcome the statutory requirements imposed upon Title IV-D recipients by 42 USC 602(a)(26), which requires the assignment of rights to arrearages, current and future support. Herein, she would have to then overcome constitutional challenges to upset well settled law regarding assignment, and overturn the legislative intent of Congress when drafting 42 USC § 666, and prevail upon the Court to grant her status as "State's Attorney or

duly appointed government representative" pursuant to 305 ILCS 5/10-10.[17] And assuming *arguendo* that Sarina can attain such status, the problems of *res judicata* and "mootness" then arise as the final constitutional challenge that must be overcome before a claim on Petitioner's behalf can be realized. In such a scenario, the guardrails provided by the Constitution, its Amendments, Equal Protection and Due Process Protections, and federal law are all removed. This slippery slope offers no sound defined route toward the destination of justice, and would have the Court upset a body of work that has served this Nation for over two centuries for the single-minded interest of one individual's pecuniary gain.

All of the Petitioner's claims are mooted by the actions of IHFS in rendering a determination June 6, 2011, which served as the basis for the subsequent ISDU Termination of Income Withholding Order on April 24, 2019, and the SSA Cease Garnishment Notice on December 20, 2021. None of the proceeding actions were timely appealed or judicially reviewed within the sixty (60) day window afforded Petitioner[18], and thus are final and cannot be reopened.[19] No amount of diversion or dicta will change the fact that, the holding in *Blessing*, the controlling law of the case, Petitioner does not possess an individual right to seek garnishment of the Social Security Benefits of Respondent nor any of the proceeds that she has seized. Petitioner fails to otherwise refute that the Federal District Court has original jurisdiction over Federal law

---

[17] Public Act 92-0876 passed by the 92nd Illinois General Assembly December 5, 2002 and enacted January 6, 2003, that the prosecution of child support for Title IV-D beneficiaries is restricted by 305 ILCS 5/10-10 "*wherein the local government units* **shall** *refer to the State's Attorney or to the proper legal representative of the government unit…*" (emphasis added). What is most notable is that the party that is issuing the citation is neither an authorized agent nor an entity empowered to act in such matters regarding Title IV matters by the State of Illinois Department of
Healthcare and Family Services Department of Child Support Services (ILDHCFS) as noted by the current Intergovernmental Agreement Number 2017-55-013K, which limits this authority to Lake County State's Attorney.
[18] [Dkt. 1, Ex. 47, p. 7-8, (1.)(c.)]
[19] *Califano v. Sanders*, 97 S.Ct. 980 (1977)

claims such as those pursuant to the Social Security Act and that her Citation to Discover Assets to garnish Respondent's Social Security Benefits under Title II of the Social Security Act (42 U.S.C. § 401 *et seq.*) poses a Federal question. Whereas the Petitioner assigned her rights to collect to the Province of Ontario, Canada in exchange for public assistance, she has no private remedy to pursue in this matter against Raymond. Petitioner fails to acknowledge or address the evidence of her assignment [Dkt. 1, Ex.62] is what constitutes the law of the case according to *Blessing*.

Throughout these proceedings what becomes blatantly obvious is that Sarina has repeatedly attempted to navigate around the restrictions imposed upon Title IV-D recipients by the Social Security Act and Federal Laws to serve her own pecuniary interest in contravention of the Congressionally legislated mandate. It should be noted that Sarina and her counsel conspired to violate Social Security Code Section 1106 [42 USC §1306] and 20 CFR § 401.100[20] and unlawfully obtained Raymond's Social Security data without his authorization, wherein they subsequently violated 42 USC § 408(a)(8) and disseminated this information to gain access to the banking and financial data of Raymond, Gwendolyn and Raymond's Mother, Mrs. Clarissa Ervin[21]. Sarina and her counsel then used this data to conduct a deposition as to Defendants ability to pay an award of legal fees, from which the State Court found the Defendants in criminal contempt and sentenced them to 30 days in jail. This conduct is prohibited by the *Exclusionary Rule* embodied in the Fourth Amendment and representative of the coercive tactics employed in *Mapp v. Ohio,* 367 U.S. 643 (1961), pp. 647,648 the Court specifically dealt with the use of evidence unconstitutionally acquired in such circumstances stating the following:

---

[20] 20 CFR § 401.100. Disclosure of records with the written consent of the subject of the record.
(a) General. Except as permitted by the Privacy Act and the regulations in this part, or when required by the FOIA, <u>we will not disclose your records without your written consent</u>. (Underline added.)
[21] [Dkt. 1, Ex. 49, 50]

"the Fourth Amendment . . . put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints [and] . . . forever secure[d] the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law . . . , and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws." *Weeks v. United States*, 232 U. S. 383 (1914), pp. 391-392. "If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." *Id.* at p. 393.

On the basis of the facts, evidence, Federal law, Constitutional and Due Process burden it is axiomatic that Federal jurisdiction is predicated in the instant case.

### III. The State Court's Overreach Has Deprived Respondents of The Civil Rights Afforded Them by the U.S. Constitution

"The Equal Protection Clause gives rise to a cause of action on behalf of a "class of one" where the plaintiff does not allege membership in a class or group, but alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for such treatment. See, *e. g., Sioux City Bridge Co.* v. *Dakota County,* 260 U. S. 441. The Clause secures every person within a State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by a statute's express terms or by its improper execution. *Id.,* at 445." *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Here as in *Willowbrook* the contour of the instant case is extremely similar as the Respondents are being divested of their Constitutional and Due Process Rights by the irrational, arbitrary, inconsistent and vexatious actions of the State Courts that have breathed life into moot matter, such that the creature of Sarina's fabrication and the State Courts actions, has now come to imperil the Respondents' property, privacy, and personal. Redress of the *Willowbrook* defendants' claims

who were similarly situated through the Federal Courts was sought and granted, wherein the Supreme Court found that they satisfied the criterion as a class of one and to be afforded the protections of § 1983. The Respondents seek the same given their state of affairs.

There has been a pattern of disparate treatment of the Respondents by the State Court throughout the pendency of this matter.[22] Given the totality of the relevant facts and the pattern and practice of conduct, it would appear that there has been intentional discrimination in violation of the equal protection and due process clauses of the 14th Amendment. The practice of providing "more favorable treatment toward similarly situated individuals not sharing the protected characteristic" can form the basis of intentional discrimination. See *Loyd v. Phillips Bros*., Inc., 25 F.3d 518, 522 (7th Cir. 1994).

> "The controlling legal principles are plain. The command of the Fourteenth Amendment is that no "State" shall deny to any person within its jurisdiction the equal protection of the laws. "A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a State government, . . . denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the State's power, his act is that of the State. This must be so, or the constitutional prohibition has no meaning." *Ex parte Virginia*, 100 U. S. 339, 347. Thus the prohibitions of the Fourteenth Amendment extend to all action of the State denying equal protection of the laws; whatever the agency of the State taking the action, see *Virginia v. Rives,* 100 U. S. 313; *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U. S. 230; *Shelley v. Kraemer*, 334 U. S. 1; or whatever the guise in which it is taken, see *Darrington v. Plummer*, 240 F. 2d 922; *Department of Conservation and Development v. Tate*, 231 F. 2d 615.

In order for a 1983 claim to survive, the Court in *Blessing* identified several factors that when satisfied, support that a statutory provision results in a federal right, The Court in *Blessing* held,

---

[22] See Dkt. 11, Ex 1 – an extensive history of disparate treatment of Respondents through the pendency of Petitioner's actions in the Illinois Courts.

" We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. *Wright*, 479 U. S., at 430. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id*., at 431-432. Third, the statute must unambiguously impose a binding obligation on the States."

In this case, Respondents assert that the Congressional legislative intent of the 14th Amendment meant that all citizens of the United States should enjoy the right to due process and equal protection, and not be treated differently where similarly situated. Respondents are citizens of the U.S. and as such are intended to be beneficiaries of these clauses of the 14th Amendment. Secondly, the rights of equal protection and due process are not vague and their enforcement is not burdensome or beyond the understanding and competence of the Court, as evidenced by the judicial oath to uphold the tenets of the U.S. Constitution as they administer justice. Finally, the 14th Amendment clearly "imposes a binding obligation on the States" as evidenced in Article I, Bill of Rights, Section 2 of the Illinois Constitution, specifically Due Process and Equal Protection as tenets "ordained" and "established" as the Constitution for the State of Illinois. Respondents satisfy these factors; however Petitioner is unable to do the same.

## PRAYER FOR RELIEF

WHEREFORE, Respondents ask for the following relief:

A. Deny to Petitioner's Memorandum in Support of Her Motion to Remand and issue a permanent injunction against the Illinois Courts and the Petitioner;

B. Issue a declaratory judgment vacating and reversing the orders of the State and Federal Courts rendered moot by IHFS June 6, 2011 determination as final *Califano v. Sanders*, 97 S.Ct. 980 (1977) and 42 U.S.C. 405;

C. Award Respondents reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, and

D. Any further relief as this Court may deem just and proper.

## CERTIFICATE OF SERVICE

This is to certify that the foregoing RESPONDENTS' RESPONSE AND BRIEF IN OPPOSITION TO PETITIONER'S MOTION TO REMAND, with exhibits, was e-filed through ECF and electronically served on November 29, 2021 to:

>Matthew Elster
>161 North Clark Street, Suite 3000
>Chicago, IL 60601
>mdelster@beermannlaw.com
>*Attorney for Petitioner*

DATED: November 29, 2021